## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

DOROTHY RAY,                                )
                                            )
        Plaintiff,                   )
                                            )
v.                                          )   Case No. CIV-15-1261-M
                                            )
CAROLYN W. COLVIN, Acting                   )
Commissioner of the Social Security         )
Administration,                             )
                                            )
        Defendant.                   )

### REPORT AND RECOMMENDATION

Plaintiff, Dorothy Ray, seeks judicial review of the Social Security Administration's denial of disability insurance benefits (DIB). This matter has been referred by United States District Judge Vicki Miles-LaGrange for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons set forth below, it is recommended that the Commissioner's decision be reversed and the case remanded for further administrative proceedings consistent with this Report and Recommendation.

## I.    Procedural Background

On June 9, 2011, Plaintiff protectively filed an application for DIB. *See* Administrative Record (AR) [Doc. No. 11], 116-117. The Social Security Administration (SSA) denied the application initially and on reconsideration. AR 70-71. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision dated August 7, 2014. AR 9-26. The Appeals Council denied Plaintiff's request for review. AR 1-6. Thus, the decision of the ALJ became the final decision of the Commissioner. Plaintiff seeks judicial review of this final agency decision.

## II.     The ALJ's Decision

The ALJ followed the sequential evaluation process required by agency regulations.  *See*

*Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (explaining five-step sequential

evaluations process); *see also* 20 C.F.R. § 404.1520.  The ALJ first determined Plaintiff had not

engaged in substantial gainful activity since May 23, 2011, the alleged onset date.  AR 14.

At step two, the ALJ determined Plaintiff suffers from the severe impairments of

degenerative disc disease of the cervical and lumbar spine, bilateral trochanteric bursitis,

headaches, anxiety disorder, and depression disorder.  AR 14-19.  At step three, the ALJ found

Plaintiff's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R.

Part 404, Subpart P, Appendix 1.  AR 19-20.

The ALJ next determined Plaintiff's residual functional capacity (RFC), concluding that:

> [Plaintiff] has the residual functional capacity to perform light
> work as defined in 20 CFR 404.1567(b) except with nonexertional
> limitations.  [Plaintiff] can: lift/carry 20 pounds occasionally and
> 10 pounds frequently; walk/stand up to 6 of 8 hours with normal
> breaks; and sit for up to 6 of 8 hours.  [Plaintiff] can never climb
> ladder/rope/scaffolds.  [Plaintiff] can perform simple tasks with
> routine supervision.  She cannot perform customer service work.
> She is able to interact appropriately with supervisors and co-
> workers for superficial work purposes.  [Plaintiff] is able to adapt
> to work situations.

AR 20-24.  The ALJ determined Plaintiff was unable to perform any past relevant work as an

owner/operator of a daycare or as a merchandise displayer.  AR 24.  Relying on the testimony of

a vocational expert (VE), the ALJ found at step five that Plaintiff was capable of making a

successful adjustment to work that exists in significant numbers in the national economy as a

silver wrapper, machine feeder, or photocopy machine operator.  AR 24-25.  The ALJ

concluded, therefore, Plaintiff was not disabled for purposes of the Social Security Act.  AR 26.

**III.    Issue Presented for Judicial Review**

Plaintiff raises three issues for judicial review.  She first argues the ALJ should have given controlling weight rather than little weight to the opinion of her treating doctor.  Pl.'s Social Security Brief [Doc. No. 12] (Pl.'s Brf.), 13-18.[1]  Plaintiff also asserts the ALJ should not have given great weight to the state agency psychological consultant.  *Id.* at 16-17.  Plaintiff's final argument is the ALJ erred in the credibility analysis.  *Id.* at 19-20.

Because the ALJ erred in her analysis to determine the weight given to the treating doctor, it is recommended that the ALJ's decision be reversed and the case remanded.

**IV.    Standard of Review**

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied.  *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted).  A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it.  *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004).  The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted).  While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not

---

[1] Page references to briefs are to the CM/ECF page number.

reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## V.    Analysis

### A.  Standards Governing Treating Physician Opinions

A sequential, two-step inquiry governs an ALJ's evaluation of the medical opinions of a claimant's treating physician. The two-step inquiry is mandatory and each step of the inquiry is "analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). First, the ALJ must decide whether the opinion is entitled to "controlling weight." If the opinion is "well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record," then the opinion must be given controlling weight. *Id*. A deficiency in either of these areas requires that the opinion not be given controlling weight. *Id.*

When a treating physician opinion is not entitled to controlling weight, the inquiry does not end. The opinion is still entitled to deference. Thus, at the second step of the inquiry, "the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Id.* As the Tenth Circuit has made clear: "[i]f this is not done, a remand is required." *Id*. The relevant factors governing the second step of the inquiry include: "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and

(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion." *Id*. at 1331 (citation omitted).

The treating physician rule is founded on the treating physician's unique perspective to the medical evidence due to both the duration and frequency of the treatment relationship. *Doyal*, 331 F.3d at 762. The rule "is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Id*. (citation omitted); *see also* 20 C.F.R. § 404.1527(c)(2) (addressing weight given to treating source due to his or her "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

### B. Treating Doctor's Medical Source Statement

Dr. Kara Rodgers, Psy.D, treated Plaintiff for approximately fourteen sessions in 2011 and 2012. AR 23. Three months after her last session with Plaintiff, Dr. Rodgers signed a letter stating that Plaintiff was diagnosed with posttraumatic stress disorder and severe major depressive disorder, listing Plaintiff's symptoms, and declaring that Plaintiff had significant difficulty attending to her responsibilities. AR 531. At the same time, Dr. Rodgers signed a Medical Source Statement assessing Plaintiff's mental limitations in numerous categories. AR 532-33. Dr. Rodgers determined Plaintiff was "markedly limited" in her ability to understand and remember detailed instructions; the ability to perform activities within a schedule, maintain regular attendance, and to be punctual; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace

5

without an unreasonable number and length of rest periods; and the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. *Id.* Dr. Rodgers found Plaintiff was either moderately limited or not limited in the other assessed areas. *Id.*

### C. The ALJ's Analysis of Dr. Rodgers' Opinions

The ALJ gave "little weight" to the Medical Source Statement of Dr. Rodgers, *see* AR 23, which is akin to giving little weight to that opinion. *See Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012); *see also Quintero v. Colvin*, 567 F. App'x 616, 620 (10th Cir. 2014) (unpublished) (stating that an ALJ's decision to assign little weight to an opinion "operate[s] as the equivalent of a rejection of the opinion"). The ALJ did not formally follow the two-step analysis, but she did provide two reasons for giving the opinion little weight. First, the ALJ noted "an inconsistency between Dr. Rodgers statement of dates of treatment and the claimant's account" because Plaintiff "reported no history of treatment by mental health professionals" at a February 2012 consultative exam. AR 23. Second, and "more significantly," the ALJ found the "marked limitations" found by Dr. Rodgers were "not substantiated by the contemporaneous treatment notes which are on the cursory side." *Id.*[2]

Both parties agree that the medical records accurately reflect the correct dates of service. Pl.'s Brf. 15; Def.'s Resp. Brief in Supp. of the Comm'rs Decision (Def.'s Brf.) [Doc. No. 18], 11 n. 2. Defendant admits "this inconsistency goes more to Plaintiff's credibility than the weight to place on Dr. Rodgers's opinion." Def.'s Brf. 11, n.2. But even if the purpose of the reference was to take issue with the credibility of Dr. Rodgers, the inconsistency would be an improper basis to reject the opinion. *See McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002)

---

[2] The ALJ also noted that "the residual functional capacity set forth above does include limitations in understanding, and in contact with others." AR 23. The Court does not consider this statement to be part of the ALJ's analysis regarding the weight of Dr. Rodgers' opinion, but instead a clarification that the ALJ did consider the stated limitations.

(holding an ALJ may not reject a treating physician's opinion based on his own credibility judgments or speculation); *see also Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) (same).

The Court must also consider the ALJ's assertion that the marked limitations in Dr. Rodgers' opinion were not substantiated by the contemporaneous treatment notes. AR 23. The ALJ did not elaborate with specifics as to how the medical opinion was not substantiated by the treatment notes. The ALJ's failure was erroneous. Indeed, when a treating physician's opinion is rejected, as the ALJ effectively did herein, the ALJ must "articulate specific, legitimate reasons for his decision." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). It is not enough for an ALJ to characterize a treating doctor's opinion as "brief, totally conclusory, and inconsistent with the overall case record;" the ALJ must provide sufficiently specific reasons for rejecting that opinion. *Id.* at 1217. Here, the ALJ's analysis was neither specific nor sufficient.

Notwithstanding the insufficiency of the ALJ's analysis, she further erred by failing to address Plaintiff's global assessment of functioning scores (GAF) contained in Dr. Rodgers' treatment notes. Dr. Rodgers gave Plaintiff a GAF score for each session. AR 389-93, 522-30. Over the course of Plaintiff's treatment, Dr. Rodgers assessed GAF scores of 46, 48, 49, and 50. *Id.* A GAF score is "a subjective determination based on a scale of 1–100 of the clinician's judgment of the individual's overall level of functioning." *Salazar v. Barnhart*, 468 F.3d 615, 624 n.4 (10th Cir. 2006). A higher GAF score indicates a higher level of function. So, while "a GAF score of 51–60 indicates moderate symptoms, such as a flat affect, or moderate difficulty in social or occupational functioning[,] . . . [a] GAF score of 41–50 indicates [s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning, such as inability to keep

a job." *Langley*, 373 F.3d at 1122 n.3 (internal quotation omitted). Therefore, Plaintiff's GAF scores in the 46-50 range showed serious, not merely moderate limitations.

An ALJ may not "pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability." *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004). Further, the decision "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996); *see also Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) (holding that an ALJ "may not ignore evidence that does not support his decision, especially when that evidence is significantly probative"). The ALJ stated that the limitations assessed by Dr. Rodgers were not substantiated in the contemporaneous treatment notes. AR 23. However, the notes contain a GAF assessment for each visit, all of which indicate serious symptoms or impairment and may indicate an inability to keep a job. *Langley*, 373 F.3d at 1122 n.3. By failing to address the GAF scores at all in the decision, the ALJ improperly disregarded probative information which, absent explanation, tends to substantiate the treating doctor's opinion. Therefore, the ALJ engaged in impermissible picking and choosing, which requires remand.[3]

The Court also notes that the ALJ did not address other factors to be considered in the second step of the treating doctor analysis. Specifically, the ALJ did not address the nature of the treatment relationship, the consistency between the opinion and the record as a whole, or

---

[3] Defendant argues that the GAF scores do not necessarily impact the ability to hold a job and therefore do not impact the determination that Dr. Rodgers' opinion garnered little weight. Def.'s Brf. 11-12. The issue, however, is not whether the GAF scores ultimately impact the RFC, but whether they should have been discussed by the ALJ, particularly in light of the fact that the GAF scores are potentially at odds with the ALJ's finding that treatment notes do not substantiate the medical opinion.

whether Dr. Rodgers was a specialist.[4]  The absence of any other reasons for giving little weight

to the treating doctor's opinion is fatal here, where no other good reasons were provided by the

ALJ.  *See Krauser*, 638 F.3d at 1330 (requiring remand when no good reasons given for the

weight given to treating opinion); *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003)

(finding the ALJ must give good reasons for the weight assigned to the opinion).

Defendant argues that despite giving Dr. Rodgers' opinion little weight, the marked

limitations were accounted for in the RFC and Plaintiff could perform the unskilled jobs about

which the VE testified.  Def.'s Brf. 10-11.  This appears to be an argument alleging harmless

error.  Although harmless error may be applied in some circumstances, *Allen v. Barnhart*, 357

F.3d 1140, 1145 (10th Cir. 2004), engaging in harmless error analysis in this action is

inappropriate because it is not the Court's function to reweigh the evidence.  *Oldham v. Astrue*,

509 F.3d 1254, 1257 (10th Cir. 2007).  Because the ALJ may ultimately reach a different

conclusion after conducting a proper analysis, the Court does not consider the harmless error

argument.  *See Allen*, 357 F.3d at 1145 ("[T]o the extent a harmless-error determination rests on

legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against

post hoc justification of administrative action . . . .").

## VI.    Conclusion

The ALJ erred in her analysis of the weight given to the opinion of Dr. Rodgers, a

treating doctor.  On remand, the ALJ should follow the two-step process to evaluate Dr.

Rodgers' opinion and should specifically address the effect of the GAF scores on the weight

given to the opinion. Because of the remand, the Court does not reach the merits of Plaintiff's

---

[4] Plaintiff addresses some of these factors in his brief to argue that Dr. Rodgers' opinion should be given controlling weight.  Pl's. Brf. 17-18.  The Court declines Plaintiff's invitation to weigh the evidence, a task reserved for the ALJ.

remaining claims as those issues "may be affected by the ALJ's treatment of the case on remand." *Watkins*, 350 F.3d at 1299.

## RECOMMENDATION

For the foregoing reasons, it is recommended that the Commissioner's decision be reversed and the case be remanded for further administrative proceedings consistent with the recommendation set forth herein.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by January 13, 2017. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 30th day of December, 2016.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE